An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

NO. COA14-198

NORTH CAROLINA COURT OF APPEALS

Filed: 5 September 2014

STATE OF NORTH CAROLINA

v.

COLECO TAYLOE BEST

Wayne County
Nos. 11 CRS 55932; 11 CRS
55933; 11 CRS 54080; 12 CRS
4460

Appeal by defendant from orders entered 24 July 2013 by Judge William R. Pittman in Wayne County Superior Court. Heard in the Court of Appeals 14 August 2014.

> *Attorney General Roy Cooper, by Special Deputy Attorney General Adren L. Harris, for the State.*
>
> *Kirby H. Smith, III, for defendant-appellant.*

HUNTER, JR., Robert N., Judge.

Coleco Tayloe Best ("Defendant") appeals from four separate orders entered by the trial court on 24 July 2013: (1) an order denying Defendant's request that the State disclose the identity of its confidential informant; (2) an order denying Defendant's request to call Irvin Smith to testify; (3) an order denying

reconsideration of Defendant's renewed motion to quash the search warrant and exclude evidence arising therefrom; and (4) an order denying Defendant's motion to dismiss the charge of possession of a stolen firearm for insufficiency of the evidence. For the following reasons, we find no error.

## I. Facts & Procedural History

Defendant was indicted on 5 November 2012 on three counts of possession with intent to sell and deliver a controlled substance, one count of trafficking in heroin by possession, one count of keeping and maintaining a dwelling for the use of controlled substances, one count of possession of a stolen firearm, one count of misdemeanor possession of drug paraphernalia, and one count of possession of a firearm by a convicted felon. Prior to trial, both *pro se* and through counsel, Defendant filed numerous motions including a motion to compel the State to disclose the identity of a confidential informant, a motion to suppress the evidence obtained from allegedly unlawful search, and a motion to suppress statements made by Defendant. All of Defendant's motions were denied by written order entered on 24 July 2013. From 23 July to 24 July 2013, Defendant was tried in Wayne County Superior Court. The

record and evidence presented at trial tends to show the following facts.

On 11 August 2011, Wayne County Sheriff's Deputy Travis Sparks ("Deputy Sparks") received a call from his supervisor, Sergeant Miller, advising Deputy Sparks that Sergeant Miller had been contacted by a confidential informant. The confidential informant relayed information that Defendant was in possession of heroin, cocaine, marijuana, and a firearm. The confidential informant further described that the drugs were stored in a black box in Defendant's residence. Sergeant Miller relayed to Deputy Sparks that the confidential informant was reliable. In fact, Sergeant Miller had received information from this particular confidential informant for approximately two years prior to Defendant's arrest, which had led to other arrests and the seizure of "large amounts" of drugs.

Together, Deputy Sparks and Sergeant Miller contacted the confidential informant, and Deputy Sparks subsequently applied for and received a search warrant to search Defendant's residence located at 854 Highway 111 in Goldsboro. The search warrant was based not only on the information received by the confidential informant in this case, but also on prior surveillance of Defendant's residence unrelated to the

confidential informant's tip. Defendant's residence had previously been under surveillance by the Wayne County Sheriff's Office because of numerous citizen complaints of "unusual amounts of traffic" at Defendant's residence.

On 12 August 2011, Deputy Sparks and several other deputies executed the search warrant of Defendant's residence. The confidential informant was not present during the search of the residence. During the search, the deputies found a box in the bedroom of the residence, which was filled with several bags of heroin, a gun, cocaine, and marijuana. Defendant was arrested and brought to the Wayne County Sheriff's Office Annex, where he was read his *Miranda* rights and declined to speak with the deputies.

Shortly after invoking his rights under *Miranda*, Defendant indicated that he wanted to speak to Corporal Dawson—one of the deputies who transported Defendant to the Annex. Upon Corporal Dawson's request, Defendant wrote a letter indicating that he wanted to speak with the deputies and was again read his *Miranda* rights. Defendant made the following incriminating statements to Corporal Dawson.

Defendant admitted to Corporal Dawson that the heroin was his, and that it was supplied by a man named "Jeff," and that

Defendant would routinely meet Jeff at various locations to make drug transactions. Defendant admitted that he had been purchasing heroin for several months and that he made $100 for every ten small bags he sold. Defendant additionally identified his cocaine and marijuana source, and admitted to purchasing approximately ten pounds of marijuana and an unknown amount of cocaine in the preceding two years. At no time during the interview with Corporal Dawson did Defendant indicate that the drugs found during the search of the residence did not belong to Defendant.

At the close of the State's evidence, Defendant requested to call as a witness Irvin Smith ("Mr. Smith"), an employee of Defendant, whom Defendant believed to be the State's confidential informant. The State objected to Mr. Smith testifying, arguing that Mr. Smith's testimony would be an attempt to "circumvent the Court's ruling" on the motion to disclose the identity of the confidential informant. The trial court agreed with the State, and allowed Mr. Smith's testimony only to make an offer of proof. The trial court refused to allow Defendant to question Mr. Smith as to whether he was the State's confidential informant in this case.

On 24 July 2013, the jury found Defendant guilty of trafficking in heroin by possession; possession of cocaine; intentionally maintaining a dwelling for the keeping or selling of heroin, cocaine, and marijuana; possession of a stolen firearm; possession of drug paraphernalia; and possession of a firearm by a felon. Defendant was sentenced to serve 70 to 84 months in the North Carolina Division of Adult Correction for the conviction of trafficking heroin. For the conviction of possession of a firearm by a felon, Defendant was ordered to serve 12 to 15 months, to run consecutively with the trafficking sentence. The trial court arrested judgment on the conviction of possession of a stolen firearm. Defendant timely appealed by giving oral notice of appeal in open court.

## II. Jurisdiction & Standard of Review

Defendant's appeal from the superior court's final judgment lies of right to this Court pursuant to N.C. Gen. Stat. §§ 7A-27(b), 15A-1444(a) (2013).

## III. Analysis

Defendant's appeal presents four questions for this Court's review: (1) whether the trial court erred in denying Defendant's motion to compel disclosure of the identity of the State's confidential informant; (2) whether the trial court violated

Defendant's constitutional right to present a defense to the charges by prohibiting Mr. Smith from testifying before the jury; (3) whether the trial court properly denied Defendant's motion to quash the search warrant and suppress the evidence found therefrom; and (4) whether the trial court properly denied Defendant's motion to dismiss the possession of a stolen firearm charge at the close of the State's evidence.  We address each in turn.

## A. Identity of the Confidential Informant

Defendant first argues that the trial court erred in denying Defendant's motion to compel disclosure of the identity of the State's confidential informant.  We disagree.

"[T]he state is privileged to withhold from a defendant the identity of a confidential informant, with certain exceptions." *State v. Newkirk*, 73 N.C. App. 83, 85, 325 S.E.2d 518, 520 (1985).  "The trial court must balance the government's need to protect an informant's identity (to promote disclosure of crimes) with the defendant's right to present his case." *State v. Jackson*, 103 N.C. App. 239, 241, 405 S.E.2d 354, 356 (1991), *aff'd per curiam*, 331 N.C. 113, 413 S.E.2d 798 (1992).  However, "before the court should even begin the balancing of competing interests . . . a defendant who requests that the identity of a

confidential informant be revealed must make a sufficient showing that the particular circumstances of his case mandate such disclosure." *State v. Watson*, 303 N.C. 533, 537, 279 S.E.2d 580, 582 (1981).

In determining whether to disclose the identity of an informant, the court should consider: (1) whether "the informer was an actual participant in the crime compared to a mere informant," and (2) whether "the state's evidence and defendant's evidence contradict on material facts that the informant could clarify." *Newkirk*, 73 N.C. App. at 86, 325 S.E.2d at 520. The factors that weigh *against* disclosure are "whether the Defendant admits culpability, offers no defense on the merits, or the evidence independent of the informer's testimony establishes the accused's guilt." *Id.* at 86, 325 S.E.2d at 520-21.

In this case, Defendant did not present sufficient evidence to show that the circumstances of his case warrant disclosure of the identity of the confidential informant. During the pretrial hearing on this issue, Defendant stated that one of his employees—whom Defendant believed to be the State's confidential informant—was actually the owner of the drugs found in Defendant's residence. Therefore, Defendant reasoned, the

State's confidential informant was an actual participant in the crime and should be disclosed. Such testimony, without further evidence, is insufficient to warrant disclosure in this case.

Defendant's testimony at the pretrial hearing was insufficient to support his contention that the drugs found in his residence belonged to someone else. In fact, all of the evidence presented at the hearing aside from Defendant's testimony tended to show that Defendant repeatedly and specifically admitted that the drugs were his. Defendant particularly described to the deputies how and from whom he acquired the drugs, the quantities of the drugs he purchased, and how much money he made when he sold the drugs.

Furthermore, evidence independent of the informer's testimony establishes Defendant's guilt. Specifically, Deputy Sparks testified that Defendant's residence had previously been under surveillance because of suspicious traffic patterns. Deputy Sparks observed on "several occasions vehicles come to [Defendant's] residence and stay for a brief amount of time, a minute to two minutes and leave."

Here, Defendant readily admitted culpability for the crimes charged, and substantial evidence independent of the informer's testimony established Defendant's guilt. As such, the trial

court did not err in finding that Defendant failed to make a sufficient showing of the need to justify disclosure of the informant's identity.

## B. Proffered Testimony of Mr. Smith

Defendant next argues that his constitutional right to confront his accusers and present a defense to the charges was violated when the trial court suppressed the proffered testimony of Mr. Smith. We disagree.

During the trial, Defendant attempted to elicit testimony from Mr. Smith that: (1) he was the State's confidential informant, and (2) he did not see any drugs in Defendant's residence. Based on the trial court's previous order that the confidential informant's identity not be disclosed, the trial court disallowed all lines of questioning dealing with the identity of the informant.

Defendant argues that his constitutional right to confront the witnesses against him was violated because the confidential informant is a relevant witness. However, Defendant had the opportunity to cross-examine each of the State's witnesses. Furthermore, Defendant was allowed to present testimony of Mr. Smith to the trial court through an offer of proof, though the scope of testimony was limited.

Once the trial court properly determined that the identity of the State's confidential informant should not be disclosed, Defendant had no right to elicit further testimony on that issue. To allow Defendant to confront a witness with the sole purpose of inquiring if he is a confidential informant would circumvent not only the order of the trial court in this case, but also the holdings of this Court, which provide for the nondisclosure of confidential informants. *See, e.g.*, *State v. Dark*, 204 N.C. App. 591, 694 S.E.2d 502 (2010); *State v. Newkirk*, 73 N.C. App. 83, 325 S.E.2d 518.

Therefore, the trial court did not err in disallowing questioning of Mr. Smith as to his involvement in this case as a confidential informant.

**C. Motion to Quash and Motion to Suppress**

Defendant next argues that the trial court erred in denying Defendant's motion to quash the search warrant and suppress the evidence found therefrom. We hold that both the motion to quash the search warrant and the motion to suppress the evidence found in Defendant's residence were properly denied.

"The standard for a court reviewing the issuance of a search warrant is whether there is substantial evidence in the record supporting the magistrate's decision to issue the

warrant." *State v. Ledbetter*, 120 N.C. App. 117, 121, 461 S.E.2d 341, 343 (1995) (citations and quotation marks omitted). Furthermore, "great deference should be paid a magistrate's determination of probable cause[.]" *State v. Arrington*, 311 N.C. 633, 638, 319 S.E.2d 254, 258 (1984).

Here, the search warrant stated ample evidence upon which the magistrate could find probable cause to issue the search warrant. First, the search warrant described the circumstances of the surveillance of Defendant's residence and Deputy Sparks' observations of the suspicious traffic patterns coming into and out of Defendant's home. Second, the search warrant stated the information relayed to Deputy Sparks by the confidential informant, and detailed the confidential informant's extensive history of providing reliable information to the Wayne County Sheriff's Office. Specifically, the search warrant states "within the last forty-eight hours . . . the CI advised [Defendant] had cocaine/heroin in a dark colored box inside the residence at 854 Old Hwy 111. The CI also stated that he/she observed a small handgun inside the residence as well." Thus, Deputy Sparks provided substantial evidence that supports the magistrate's decision to issue the search warrant in this case.

Because it was discovered by lawful means, evidence of the box containing marijuana, heroin, cocaine, and the firearm retrieved from Defendant's residence was properly admitted at trial. The trial court did not err in denying Defendant's motion to suppress the evidence discovered from the search.

**D. Motion to Dismiss**

Finally, Defendant argues that the trial court erred in denying Defendant's motion to dismiss the possession of a stolen firearm charge at the close of the State's evidence. Defendant argues that Deputy Sparks' testimony at trial was not competent evidence to establish that the hand gun was stolen. Defendant takes issue with the fact that Deputy Sparks did not personally "run a trace" on the firearm, and that no National Crime Information Center ("N.C.I.C.") report was put into evidence indicating that the gun was stolen. Defendant asserts that Deputy Sparks' testimony that the firearm was reported stolen constitutes hearsay. We disagree, and find that Defendant's motion to dismiss was properly denied by the trial court.

"In reviewing the denial of a motion to dismiss, this Court must examine the evidence adduced at trial in the light most favorable to the State to determine if there is substantial evidence of every essential element of the crime. Evidence is

'substantial' if a reasonable person would consider it sufficient to support the conclusion that the essential element exists." *State v. Williams*, 151 N.C. App. 535, 539, 566 S.E.2d 155, 159 (2002). "If a reasonable inference of defendant's guilt can be drawn from a combination of the circumstances, defendant's motion is properly denied." *State v. Thomas*, 296 N.C. 236, 244, 250 S.E.2d 204, 208 (1978).

In this case, Deputy Sparks testified at trial that he contacted the dispatch center to conduct a search on the firearm seized from Defendant's residence, and relayed the firearm's serial number to determine if it had been reported stolen. Dispatch ran the serial number through N.C.I.C. and confirmed that the firearm had been reported stolen by an individual living in La Grange, North Carolina. Deputy Sparks described the procedure by which law enforcement officers regularly use the N.C.I.C. database to determine whether property was reported stolen.

We find the facts of this case to be indistinguishable from those in *State v. Sneed*, 210 N.C. App. 622, 709 S.E.2d 455 (2011). In *Sneed*, the officer was notified shortly after he arrived on the scene that the serial number of the gun recovered from the defendant's person had been run through N.C.I.C. and

was reported stolen. *Id.* at 628, 709 S.E.2d at 460. The officer verified that the gun was stolen by later running the serial number himself. *Id.* The printout of the N.C.I.C. report was not introduced into evidence at trial. This Court held in *Sneed* that "the NCIC database is a 'database compilation, in any form' falling within Rule 803(6)," the hearsay exception for records of regularly conducted business activity. *Id.* at 629, 709 S.E.2d at 460.

We therefore find that a reasonable inference can be drawn that the firearm recovered from Defendant's residence was stolen, and the trial court did not err in denying Defendant's motion to dismiss the charge of possession of a stolen firearm.

## IV. Conclusion

For the reasons stated above, we find no error.

NO ERROR.

Judges STEELMAN and GEER concur.

Report per Rule 30(e).